# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | |
|---|---|
| **ELAINE HARTMAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CAUSE NO. 1:12-CV-445** |
| ) | |
| **DANA HOLDING CORPORATION and** ) | |
| **WEATHERHEAD-UAW COMBINED** ) | |
| **HOURLY EMPLOYEE PENSION PLAN,** ) | |
| *and its successors*, ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

## I. INTRODUCTION

In April 2011, Plaintiff Elaine Hartman's husband, Robert Hartman, passed away.  Mr. Hartman was a former employee of Weatherhead Company ("Weatherhead"), Dana Holding Corporation's ("Dana") predecessor and, at the time of his death, was receiving a pension from Weatherhead.  After he died, Mrs. Hartman contacted Dana to inquire about her survivor annuity and was told her husband had elected against it in 1979.  Mrs. Hartman then requested the plan document and summary plan description ("SPD"), together with her husband's election form and the spousal waiver form, in effect in 1979.

Months later, and after a series of unproductive communications with Dana staff, who indicated that they were still looking for the 1979 plan documents, Mrs. Hartman brought this suit against Dana and the Weatherhead-UAW Combined Hourly Employee Pension Plan[1] under

---

[1] Defendants assert that Mr. Hartman's pension was actually with the Weatherhead Company Pension Plan for Salaried Employees (Defs.' Br. in Supp. of Mot. for Summ. J. ("Defs.' Br. in Supp.") 2 n.1), which Mrs. Hartman does not dispute.  As such, Dana Holding Corporation and the Weatherhead Pension Plan for Salaried Employees are the proper Defendants here.

29 U.S.C. § 1132(a)(1)(A) and (c)(1), better known as § 502(a)(1)(A) and (c)(1) of the Employee

Retirement Income Security Act ("ERISA"), seeking statutory penalties against Dana for its

failure to provide the documents she requested as well as attorney's fees.[2]  She further alleges

that Dana breached its fiduciary duty to her under 29 U.S.C. §§ 1132(a)(2) and 1109 and failed

to establish and maintain a reasonable claims procedure as required by 29 U.S.C. § 1133.

Both Mrs. Hartman and Defendants have now moved for summary judgment.  (Docket #

22, 24.)  Defendants primarily argue that Mrs. Hartman lacks standing to assert her claims and

that, even if she did have standing, ERISA does not impose a penalty for failure to provide what

they characterize as historical documents. (Docket # 25, 27, 34.)  Mrs. Hartman asserts, among

other arguments, that she does have standing as a beneficiary with a colorable claim to benefits

and that ERISA requires production of the documents she sought if requested, thereby

warranting the imposition of a statutory penalty. (Docket # 23, 28, 29.)

For the following reasons, both Mrs. Hartman's and Defendants' motions for summary

judgment will be GRANTED IN PART and DENIED IN PART.

## II.  FACTUAL BACKGROUND

Robert Hartman worked for Weatherhead for over twenty-four years, until his early

retirement in 1976.  (Hartman Aff. ¶ 3, Exs. 1, 2; *see* Schlievert Aff. Ex. A at 71, 73.[3])  As a

salaried employee, he participated in the Weatherhead Division Pension Plan for Salaried

---

[2] Accordingly, subject matter jurisdiction arises under 28 U.S.C. § 1331.   Jurisdiction of the undersigned
Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (*See* Docket # 17.)

[3] When citing to the exhibits to the Schlievert Affidavit, the Court cites to the page number at the bottom
right-hand corner, which provides "DEF ___."

Employees (the "Plan").  (Holmes Aff. ¶ 3.[4])  In March 1978, Mr. Hartman received a letter from

Weatherhead regarding his deferred vested pension, which he could elect to receive once he

turned fifty-five years old.  (Hartman Aff. Ex. 2; Schlievert Aff. Ex. A at 71.)  The letter

informed Mr. Hartman of the following:

> If you are married at the time your pension is to commence, it will be paid in a form having the effect of a 50% joint and survivor annuity.  This means that you will receive a pension for life, but if you die leaving your spouse as a survivor, your spouse will receive, for his or her lifetime, 50% of the pension to which you are entitled.
>
> You may elect to have your pension paid in a form other than that described above. The other forms of payment available to you will be described in detail at the time you elect to have your pension commence.

(Hartman Aff. Ex. 2; Schlievert Aff. Ex. A at 71.)

In 1979, Dana Corporation, which later became Dana Holding Corporation, purchased

Weatherhead.  (Holmes Aff. ¶ 4.)  Dana Limited, a subsidiary of Dana Holding Corporation,

now sponsors and administers the Plan.  (Holmes Aff. ¶ 4.)

Mr. Hartman turned fifty-five in May 1979 (*see* Hartman Aff. Ex. 1), and Weatherhead

sent him an election letter with a cover letter stating that a request for early commencement of

his pension was enclosed and instructing him to sign the original and return it to Weatherhead

(Hartman Aff. Ex. 3; Schlievert Aff. Ex. A at 65).  The enclosed election letter provided the

following: "I understand that due to early commencement of my Deferred Vested Pension I will

receive $96.15 per month on a Life Only Basis.  I understand that upon my death no further

payments will be made."  (Hartman Aff. Ex. 3; Schlievert Aff. Ex. A at 66.)  Mr. Hartman

---

[4] Holmes has two Affidavits of record; the first, dated August 5, 2013, is cited herein as "Holmes Aff. ¶ __," and the second, dated September 6, 2013, is cited as "Holmes Aff. ¶ __, Sept. 6, 2013."

subsequently signed this election form and returned it to Weatherhead.  (Hartman Aff. Ex. 3; Schlievert Aff. Ex. A at 59.)  Elaine Hartman, Mr. Hartman's wife, maintains that at all times surrounding her husband's election and receipt of his pension benefit, he consistently told her that she would be entitled to a survivor annuity if she survived him.[5]  (Hartman Aff. ¶ 4.)  According to Mrs. Hartman, she never signed a spousal waiver.  (Hartman Aff. ¶ 10.)

In April 2011, Mr. Hartman passed away.  (Hartman Aff. ¶ 5.)  Shortly thereafter, Mrs. Hartman contacted Dana to inquire about her survivor annuity and, in response, received a letter dated May 6, 2011, from Dana.  (Hartman Aff. ¶¶ 5-6, Ex. 4; Schlievert Aff. Ex. A at 55.)  The letter informed Mrs. Hartman that Dana was confirming any benefits she or any other survivors may be entitled to, which could take up to ten days, and instructed her to contact the Dana Service Pension Center with any questions.  (Hartman Aff. Ex. 4; Schlievert Aff. Ex. A at 55.)  Over three months later, Mrs. Hartman received a second letter from Dana, informing her that her husband had been receiving a single life annuity pension with no further benefits payable after death.  (Hartman Aff. Ex. 5; Schlievert Aff. Ex. A at 56.)

On January 16, 2012, Mrs. Hartman and her attorney, Douglas Powers, called the Dana Pension Service Center to inquire about her survivor annuity.  (Hartman Aff. ¶ 11(a).)  A representative told them that the Dana Pension Service Center would look into the situation and report back, but neither Mrs. Hartman nor Mr. Powers received any response by the end of January.  (Hartman Aff. ¶¶ 11(a)-(b).)  Throughout the next three months, Mrs. Hartman or her

---

[5] The potential survivor benefit for Mrs. Hartman, who is 81 years old, would be $48.07 a month. (Pl.'s Mem. in Supp. of Her Mot. for Summ. J. ("Pl.'s Mem. in Supp.") 1.)  By choosing a life only annuity, Mr. Hartman received an additional $10 per month for 31 years and 10 months, giving him $3,800 over what he otherwise would have received in pension benefits during his lifetime. (Pl.'s Resp. to Defs.' Mot. for Summ. J. 1; Defs.' Reply In Supp. of Its Mot. for Summ. J. 1 n.1.)

attorney spoke to staff from the Dana Pension Service Center multiple times, inquiring about her survivor annuity and repeatedly requesting her husband's election form, a spousal waiver form, the Plan document, and the SPD in effect when Mr. Hartman made his election in 1979. (*See* Hartman Aff. ¶¶ 11(b)-(i); Powers Aff. ¶¶ 3(a)-(d).) Some time after Mr. Powers called the Dana Pension Service Center in April 2012 (*see* Hartman Aff. ¶ 11(g)), Mrs. Hartman received from Dana a SPD for all Weatherhead benefits, including the Plan, which contained a handwritten notation stating, "Effective April 15, 1986 - April 1, 1989" (Hartman Aff. ¶ 11(h), Ex. 6). This SPD provided that before a participant with a spouse can elect to receive a pension with no reduction for a survivor benefit, "federal law dictates that [the] spouse give written, witnessed consent to that election." (Hartman Aff. ¶ 11(h), Ex. 6 at 35.) By this point, Mrs. Hartman still had not received her husband's election form, any spousal waiver, or the Plan document or SPD from 1979.

At the beginning of May, after yet another phone call from Mr. Powers, a Dana Pension Service Center representative suggested that Mrs. Hartman send a formal appeal letter to the Dana Appeals Board in Lincolnshire, Illinois, and provided him with an address. (Powers Aff. ¶ 3(e).) Mr. Powers subsequently sent a formal appeal letter via certified mail to the Dana Pension Center Appeals Board in Lincolnshire, Illinois, on May 15, 2012. (Powers Aff. ¶ 3(f); Hartman Aff. Ex. 7.) The return receipt indicates that the letter was received on May 17, 2012. (Powers Aff. ¶ 3(f); Hartman Aff. Ex. 7 at 10.) The appeal letter details Mrs. Hartman's and Mr. Powers's communications with Dana and the Dana Pension Service Center and asserts that Dana's failure to provide 1979 Plan-related documents, including the Plan document, the SPD, Mr. Hartman's election form, and Mrs. Hartman's spousal waiver form, exposed Dana to a per

diem statutory penalty.  (Hartman Aff. Ex. 7 at 1-4.)

After another unproductive phone call to the Dana Pension Service Center at the end of May inquiring about the appeals process (Powers Aff. ¶ 3(g)), Mr. Powers was informed on June 5, 2012, that there had been a delay in processing the appeal because it should have been sent to Toledo, Ohio, rather than Lincolnshire, Illinois, and that a decision could take as long as ninety days.  (Powers Aff. ¶ 3(h).)  Later that day, Mr. Powers received a call from Sylvester Holmes, a member of the Dana corporate legal staff, who apologized for the delay in resolving Mrs. Hartman's claims.  (Powers Aff. ¶ 3(i).)  Mr. Holmes stated that he would email Mr. Hartman's election form to Mr. Powers and, after Mr. Powers reiterated the request for the relevant documents in effect in 1979, represented that Dana could not locate these documents, but would keep looking for them.  (Powers Aff. ¶ 3(i); Holmes Aff. ¶ 7.)

On June 6, 2012, Mr. Holmes emailed a copy of Mr. Hartman's election form, without the cover letter, to Mr. Powers.  (Powers Aff. ¶ 3(j), Ex. A; Holmes Aff. ¶ 8.)  In August, as the ninety-day decision period neared and then passed, Mr. Powers called the Dana Pension Service Center three more times.  (Powers Aff. ¶¶ 3(k)-(m).)  During the last call, Mr. Powers was advised that Dana had instructed its pension service center not to answer any more questions about Mrs. Hartman's claim.  (Powers Aff. ¶ 3(m).)

Shortly thereafter, on September 7, 2012, Mr. Powers called Mr. Holmes, inquiring about the status of Mrs. Hartman's claim.  (Powers Aff. ¶ 3(n).)  Mr. Holmes stated that he considered his June 6th email attaching Mr. Hartman's election letter to have resolved her claim.  (Powers Aff. ¶ 3(n).)  Mr. Powers then sent a letter on September 10, 2012, outlining the shortcomings he perceived in Dana's handling of Mrs. Hartman's claims.  (Powers Aff. ¶ 3(o); Compl. Ex. 8.)

When Mr. Powers called Mr. Holmes the following month, Mr. Holmes confirmed receipt of this letter and reiterated that he considered the claim resolved. (Powers Aff. ¶ 3(p).)

Mrs. Hartman subsequently brought suit against Dana and the Plan in December 2012. (Powers Aff. ¶ 4; *see* Docket # 1.) As part of the litigation, Mr. Powers served discovery requests, to which Defendants responded on July 1, 2013, enclosing the 1986 Plan with the explanation that it was the oldest copy of the pension plan that Dana could locate. (Powers Aff. ¶¶ 5-6, Ex. D; *see* Holmes Aff. ¶ 14, Ex. B.) On August 5, 2013, in response to Mrs. Hartman's motion for summary judgment, Mr. Holmes averred that, although Dana maintains an archive of various plan documents and makes a good faith effort to retain them, it could not locate the exact version of the Plan in effect when Mr. Hartman made his election in 1979, despite its good faith efforts to locate these documents. (Holmes Aff. ¶ 13.) By way of explanation, Mr. Holmes represented that Dana, through its third party administrator, administers plans for over 40,000 retired, deferred vested, and active participants, who are entitled to receive benefits in over fifty plans that have been amended multiple times; as such, keeping track of all these plans and versions is not easy, especially here, when the operative version of the plan relates to approximately the same time Dana purchased Weatherhead. (Holmes Aff. ¶ 12.)

But on September 6, 2013, Mr. Holmes revealed that two days earlier Dana had located the SPD in effect in May 1979 when Mr. Hartman signed his election form. (Holmes Aff. ¶¶ 5, 6, Sept. 6, 2013.) The SPD does not contain a provision requiring spousal consent; Mr. Holmes represents that if the 1979 Plan included such a provision, it would have been required to be mentioned in the SPD. (Holmes Aff. ¶ 7, Sept. 6, 2013.)

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no disputed genuine issues of material fact.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."  *Id.*  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."  *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)).  If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted.  *Payne*, 337 F.3d at 770.  A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants."  *Id.*  However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial."  *Id.* at 771.

"When cross-motions for summary judgment are filed, courts 'look to the burden of proof that each party would bear on an issue of trial; [courts] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact.'"  *M.O. v. Ind. Dep't of Educ.*, 635 F. Supp. 2d 847, 850 (N.D. Ind. 2009) (alteration in original) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)).  For claims seeking benefits under an ERISA plan, the plaintiff bears the burden of proving the claimant's entitlement to the benefits of insurance coverage, while the defendant insurer bears the burden of establishing the

claimant's lack of entitlement. *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007).

"The contention of one party that there are no issues of material fact sufficient to prevent the entry of judgment in its favor does not bar that party from asserting that there are issues of material fact sufficient to prevent the entry of judgment as a matter of law against it." *M.O.*, 635 F. Supp. 2d at 850 (citation omitted); *see Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984). Cross-motions for summary judgment do not alter the respective burdens on cross-motions for summary judgment. *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 (7th Cir. 2008). "The motions are treated separately." *Id.*; *accord M.O.*, 635 F. Supp. 2d at 850.

## IV.  DISCUSSION

The parties' motions for summary judgment raise the following three issues: (1) whether Mrs. Hartman has standing to pursue her claims; (2) whether Dana is subject to a penalty under ERISA § 502(c)(1) for its failure to timely produce documents; and (3) whether Dana breached its fiduciary duty to Mrs. Hartman.  Each of these issues will be addressed in turn.

### A.  Mrs. Hartman Has Standing as a Beneficiary

To bring her claims under ERISA, Mrs. Hartman must first establish that she has standing to do so.  *Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 678 (7th Cir. 2002). Under ERISA, only a "participant" or a "beneficiary" is entitled to request plan documents under 29 U.S.C. § 1132(c)(1) and seek penalties for the failure of their production.  *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 878 (7th Cir. 2001).  Similarly, besides the Secretary of Labor, only a participant, beneficiary, or fiduciary may sue for a breach of fiduciary duty under 29 U.S.C. § 1132(a)(2).

ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Claimants can demonstrate that they "may become entitled to a benefit," and thus qualify as beneficiaries, only if they can show that at the time they filed suit they had a "colorable claim to vested benefits." *Neuma, Inc.*, 259 F.3d at 878 (citations omitted). The Seventh Circuit Court of Appeals has noted that "[t]he requirement of a colorable claim is not a stringent one," *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 790 (7th Cir. 1996), and that "jurisdiction depends on an arguable claim, not on success," *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991); *see Neuma, Inc.*, 259 F.3d at 878 ("Even in cases where a plaintiff's claim ultimately failed, the possibility of success was sufficient to establish participant or beneficiary status." (citation and internal quotation marks omitted)). The Seventh Circuit has held that a plaintiff's claim need only be nonfrivolous. *Kamler*, 305 F.3d at 678 (citation omitted).

Under the information available at the time she filed suit, Mrs. Hartman could have been entitled to a survivor benefit by the terms of the 1979 Plan. *See Sladek v. Bell Sys. Mgmt. Pension Plan*, 880 F.2d 972, 978 (7th Cir. 1989) (holding that a spouse who was not designated by her husband as survivor annuitant was nevertheless a beneficiary because, absent her husband's election, she would have been a beneficiary designated by the plan). When Mr. Hartman began his pension, the standard election for a married individual was a 50% joint and survivor annuity. (Hartman Aff. Ex. 3 at 2; Schlievert Aff. Ex. A at 71.) Although Mr. Hartman elected to take his pension on a life only basis with no survivor benefit (Hartman Aff. Ex. 2; Schlievert Aff. Ex. A at 59), Mrs. Hartman did not consent to this election (Hartman Aff. ¶ 10).

Furthermore, Mrs. Hartman argues that Dana failed to fulfill the promise it made to her husband in its March 1978 letter to explain to him the other available pension options before he elected a single life annuity, thereby breaching its fiduciary duty to him and giving her a colorable claim to benefits under the Plan. (Pl.'s Reply Br. 6-7; *see* Pl.'s Mem. in Supp. 2-3.)

Defendants argue that Mrs. Hartman's consent is irrelevant because spousal consent was not, in fact, required in 1979. (*See* Defs.' Resp. to Pl.'s Mot. for Summ. J. ("Defs.' Resp.") 8; Defs.' Br. in Supp. 7.) But since Defendants did not produce the 1979 SPD until September 2013, it was possible under the information available at the time Mrs. Hartman filed suit in December 2012 that the 1979 Plan, under which Mr. Hartman took his pension, required spousal consent, which would have given Mrs. Hartman a claim to survivor benefits. Since Defendants could not then locate the 1979 Plan document or SPD, they could only speculate that such a requirement was not in that Plan based on the fact that the law did not require spousal consent until 1984. Simply because the law did not require spousal consent, however, did not necessarily mean that the 1979 Plan did not provide for it.

Furthermore, Mrs. Hartman's argument that Dana breached its fiduciary duty to her husband, resulting in his election against her survivor annuity, has "at least an arguable chance of success" and "is not so bizarre or so out of line with existing precedent" that Mrs. Hartman failed to meet "the low threshold of the colorable requirement." *Neuma, Inc.*, 259 F.3d at 879 (internal quotation marks and citations omitted). As such, it was possible under the information available at the time Mrs. Hartman filed suit, that the 1979 Plan required spousal consent or that Dana breached its fiduciary duty to Mr. Hartman. Thus, Mrs. Hartman has a colorable claim as a beneficiary under the Plan and standing to pursue her ERISA claims.

### B. A Statutory Penalty Will Be Imposed on Dana

ERISA contains a disclosure provision that requires a plan administrator to, "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[ ] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Section 1132(c)(1)(B) gives teeth to this disclosure obligation, rendering a noncompliant administrator liable for up to $110 per day for failing to produce requested plan documents within 30 days of the request. *Mondry v. Am. Family Mut. Ins.*, 557 F.3d 781, 793 (7th Cir. 2009); *see* 29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2575.502c-1 (increasing the per diem penalty from $100 to $110). A penalty is not mandatory, and the amount, if any, is left to the court's discretion. *Reddy v. Schellhorn*, No. 05 C 639, 2006 WL 642647, at *3 (N.D. Ill. Mar. 8, 2006) (citing *Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 858 (7th Cir. 2002); *Ziaee v. Vest*, 916 F.2d 1204, 1210 (7th Cir. 1990)).

To trigger this discretionary power to impose penalties, a beneficiary must establish that the plan administrator "was required to make available the requested information, that the [beneficiary] requested the information, and that the administrator failed to provide the information." *Lowe v. SRA/IBM-MacMillan Pension Plan*, No. 01 C 58, 2003 WL 1565841, at *3 (N.D. Ill. Mar. 25, 2003) (citing *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 622 (7th Cir. 1987)), *aff'd sub nom. Lowe v. McGraw-Hill Cos.*, 361 F.3d 335 (7th Cir. 2004).

Touching on this first requirement, Defendants argue that the 1979 Plan documents Mrs. Hartman requested are historical documents that Dana was not required make available under § 1024(b)(4). (Defs.' Br. in Supp. 7-8; Defs.' Resp. 9-11.) There is some case law suggesting that

outdated plan documents, such as old SPDs, annual reports, and modifications, fall outside the category of documents that a plan administrator must provide under § 1024(b)(4). *See Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895, 903 (7th Cir. 1999); *Jackson v. E.J. Brach Corp.*, 937 F. Supp. 735, 739 (N.D. Ill. 1996). Indeed, § 1024(b)(4) seems to require that only the *latest* SPD be provided upon request. 29 U.S.C. § 1024(b)(4); *see Thompson v. Cont'l Cas. Co.*, 602 F. Supp. 2d 943, 946 (N.D. Ill. 2009). But § 1024(b)(4) also requires that a plan administrator furnish "other instruments under which the plan was established or operated." 29 U.S.C. § 1024(b)(4). Although not defined in the statute, the Seventh Circuit has held that this "other instruments" language "reaches only formal legal documents governing a plan." *Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 758-59 (7th Cir. 1999).

When determining whether a plan document falls within the disclosure provision, courts consider the purpose of this provision, *see Hakim v. Accenture U.S. Pension Plan*, 656 F. Supp. 2d 801, 824 (N.D. Ill. 2009); *Davis v. Ret. Plan of Phibro Animal Health Corp. & Subsidiaries & Affiliates*, No. 08-cv-779-JPG, 2009 WL 1376245, at *3 (S.D. Ill. May 14, 2009), to ensure that the individual knows exactly where she stands with respect to the plan, which includes having the information necessary to determine her eligibility and understand her rights under the plan and to ascertain the procedures she must follow to obtain benefits, *Mondry*, 557 F.3d at 793 (citations omitted). As such, outdated documents are generally not required to be provided because they are normally not necessary to determine one's rights under the current plan. *Davis*, 2009 WL 1376245, at *3.

The Seventh Circuit has nonetheless recognized that "a plan participant would be entitled to outdated plan documents where a claims administrator expressly relied on such documents

13

because, under those circumstances, the participant would need to 'have access to [the outdated documents] in order to understand what the claims administrator [was] doing and to effectively assert his rights under the plan.'" *Hakim*, 656 F. Supp. 2d at 824 (quoting *Mondry*, 557 F.3d at 800). These cases teach that a participant or beneficiary is entitled to outdated plan documents if they contain information necessary for her to understand and assert her rights under the plan. *Id.* at 825. Furthermore, an outdated plan or SPD that controls a beneficiary's claim is "undoubtedly an 'instrument [ ] under which the plan [was] established or operated' and therefore subject to section 1024(b)(4)'s disclosure obligation." *Huss v. IBM Med. & Dental Plan*, 418 F. App'x 498, 509 (7th Cir. 2011) (unpublished); *see also Bilello v. JP Morgan Chase Ret. Plan*, 649 F. Supp. 2d 142, 170 (S.D.N.Y. 2009) ("Applying ERISA § 104(b)(4), to the extent that the 1989 Plan, the Pre-1989 Plan, or any other predecessor plan is still an 'instrument[ ] under which the [current] plan is . . . operated,' the Plan Administrator was required to disclose those documents.").

Here, the 1979 Plan document and SPD are critical to Mrs. Hartman's understanding of her rights and eligibility. These documents control not only whether the Plan required spousal consent to elect against a survivor annuity in 1979, but also what fiduciary duties the Plan owed to Mr. Hartman before he made his election. Because the 1979 Plan document and SPD contain information necessary for Mrs. Hartman to understand and assert her rights under the Plan and control the determination of whether she is entitled to a survivor annuity, they qualify as "other instruments under which the plan [was] established or operated," thereby requiring Dana to produce the documents within thirty days of her written request. *See Huss*, 418 F. App'x at 509; *Davis*, 2009 WL 1376245, at *3.

And although Defendants rely heavily on *Jackson*, 937 F. Supp. at 739, for their contention that Dana was not required to produce the 1979 Plan documents, this case is easily distinguishable. In *Jackson*, the court refused to penalize an administrator for failing to provide documents that had "*no current application whatsoever.*" *Id.* (emphasis added). Here, the 1979 Plan documents, while admittedly old, *do* have a current application. Indeed, the terms of the 1979 Plan documents dictate Mrs. Hartman's current right and eligibility to a survivor annuity, giving those documents a current application and subjecting them to disclosure. *See Davis*, 2009 WL 1376245, at *3 (holding that a prior plan was subject to disclosure under § 1024(b)(4) when the plaintiff had to have access to the terms and conditions of a prior plan to calculate the amount of benefits to which he was entitled).

As to the second requirement—that Mrs. Hartman requested the information—the statute requires that a request for documents be made in writing to the plan administrator. *See* 29 U.S.C. § 1024(b)(4). Defendants apparently do not dispute that Mrs. Hartman properly made a request to the Plan administrator. (*See* Defs.' Resp. 9-11 (addressing Mrs. Hartman's statutory penalty claim and never disputing her assertion in her supporting brief that she made a proper request to the plan administrator).) Moreover, both parties appear to agree that, despite several verbal requests, Mrs. Hartman made her first written request for the documents on May 15, 2012, which Dana received on May 17, 2012. (Pl.'s Mem. in Supp. 9 ("But the date, as far as a written request, should be measured as of the receipt of the May 15 Letter on May 17, 2012."); Defs.' Resp. 10 ("Plaintiff acknowledges that the Defendants first received her written request for documents on May 17, 2012.").) Dana subsequently had thirty days within which to produce the 1979 Plan documents, which it did not do. As such, Dana is exposed to a statutory penalty from

June 16, 2012—thirty days after it received Mrs. Hartman's initial request—until it produced the requested documents.

Dana's production of these documents, however, was complicated by its inability to locate them. (*See* Holmes Aff. ¶¶ 13-14.) To review, after Dana received Mrs. Hartman's request for the 1979 Plan documents on May 17, 2012, Mr. Holmes, a member of Dana's corporate legal staff, called Mr. Powers on June 5, 2012, informing him that Dana could not locate these documents, but would keeping looking for them. (Holmes Aff. ¶ 7.) Mr. Holmes also sent Mr. Powers an email the following day, enclosing Mr. Hartman's election form and reiterating that Dana would send a copy of the Weatherhead plan in effect in 1979 as soon as it was able to retrieve it from its archive storage facility. (Holmes Aff. ¶ 9, Ex. A.) Over a year later, on July 1, 2013, and in response to Mrs. Hartman's discovery requests, Dana produced the 1986 Plan—actually entitled the *Dana Corporation*, Weatherhead Division Pension Plan for Salaried Employees—indicating that it was the oldest copy of the pension plan it could locate. (Hartman Aff. Ex. D; Schlievert Aff. ¶ 4, Ex. B.)

Defendants contend that Dana responded promptly to Mrs. Hartman's May 17th written request for documents, informing her on June 5th that they could not locate the documents, but would keep looking, and sending her husband's election form on June 6th, thus providing all the documents it could locate less than three weeks after receiving her written request. (Defs.' Resp. 10-11.) They further assert that the statutory penalty should not apply to documents that Dana misplaced or lost because its failure to produce these documents "results from matters reasonably beyond the control of the administrator," thus falling into § 1132(c)(1)'s exception, and not the result of bad faith. (Defs.' Br. in Supp. 8; Defs.' Resp. 11.)

To support this position, Defendants once again rely on *Jackson*, quoting its statement that "the nonexistence of an out-dated document, or in some instances the misplacing of such a document," falls into § 1132(c)(1)'s exception for matters reasonably beyond the administrator's control, "especially when there is no evidence of bad faith on the part of the plan administrator." (Defs.' Br. in Supp. 8; Defs.' Resp. 11 (quoting *Jackson*, 937 F. Supp. at 739).) But, as already noted, *Jackson* dealt with outdated plan documents that had "no current application whatsoever," which is not the case here. Although a penalty may be inappropriate where the nonexistent or misplaced document has no current application, "a court may impose a penalty on a plan administrator for failure to provide a nonexistent document to a [beneficiary] *where the document must be kept pursuant to ERISA.*" *Ward v. Maloney*, 386 F. Supp. 2d 607, 613 (M.D.N.C. 2005) (emphasis in original). The Court has already determined that the 1979 Plan documents are within the scope of § 1024(b)(4), and, thus, Dana can be penalized for failing to timely provide those documents. *See id.*

But "[t]he purpose of ERISA's penalty provision is 'not so much to penalize as to induce plan administrators to respond in a timely manner to a participant's request for information.'" *Hite v. Biomet, Inc.*, 38 F. Supp. 2d 720, 735 (N.D. Ind. 1999) (quoting *Winchester v. Pension Comm. of Michael Reese Health Plan, Inc. Pension Plan*, 942 F.2d 1190, 1193 (7th Cir. 1991)). As such, in deciding whether to impose a penalty under § 1132(c)(1), courts consider the conduct and intent of the administrator in not providing the documents, the length of the delay, the number of requests made and documents withheld, any prejudice or harm to the requestor, the requestor's need to hire a lawyer and engage in litigation, and the administrator's failure to keep the requestor informed of difficulties in locating documents. *See Mondry v. Am. Family*

*Mut. Ins. Co.*, No. 06-cv-320-bbc, 2010 WL 3730910, at *8 (W.D. Wis. Sept. 20, 2010) (citing *Lowe*, 361 F.3d at 338), *aff'd*, 497 F. App'x 603 (7th Cir. 2012) (unpublished); *Reddy*, 2006 WL 642647, at *3; *Hite*, 38 F. Supp. 2d at 735; *Jackson*, 937 F. Supp. at 741. Accordingly, any bad faith on behalf of Dana, of which Defendants contend there is no evidence, is just one factor for the Court to take into account.

In an effort to show the absence of bad faith and that its failure to timely produce the 1979 Plan documents was reasonably beyond its control, Dana explains that it administers plans for over 40,000 participants, has over fifty plans under which these participants receive benefits, all of which have been amended multiple times, and that the 1979 Plan documents relate to approximately the same time that it purchased Weatherhead. (Holmes Aff. ¶ 12.) But Dana's explanations are insufficient to establish that its failure to timely produce the 1979 documents was reasonably beyond its control. Keeping track of over fifty plans and their amendments is undoubtedly not easy, but the number of these plans, the likely differences between them, and the over 40,000 participants and their beneficiaries these plans affect, highlight the importance of maintaining these plan documents such that every participant and beneficiary can obtain the plan applicable to their claim to determine and understand their rights and eligibility.

Moreover, although Dana maintains that it made a good faith effort to timely locate the 1979 Plan documents in response to Mrs. Hartman's request (Holmes Aff. ¶ 13), it offers no details regarding the search it purportedly undertook to locate these documents, such as who searched for them and who those persons spoke to, the nature and scope of the search, how long the search lasted, or when the search occurred. Furthermore, Dana actually located the 1979 SPD in September 2013 "in an unmarked box in [Dana's] file room," leading to the reasonable

inference that Dana did not, in fact, conduct a thorough search at the time Mrs. Hartman made her request.

As to whether to impose a statutory penalty, the prejudice and harm to Mrs. Hartman from Dana's failure to timely produce the 1979 Plan documents is not insignificant. Mrs. Hartman needed these documents to determine her right or eligibility to a survivor annuity or what fiduciary duties the Plan owed to her husband in explaining the pension options available to him, either of which could feasibly result in a successful claim to benefits under the Plan. Furthermore, it took Dana more than fourteen months to produce the 1979 SPD, and it has yet to produce the 1979 Plan document. Mrs. Hartman had to hire a lawyer and engage in litigation—indeed, she only received Mr. Hartman's election form in response to her attorney's request and did not receive the 1979 SPD until after she filed a motion for summary judgment—which is another factor supporting imposition of a statutory penalty. *Mondry*, 2010 WL 3730910, at *8.

Finally, although Mr. Holmes initially informed Mrs. Hartman in June 2012 that Dana was having difficulty locating the 1979 Plan documents, but would keeping looking for them and send them when they were found, Dana provided no more information about its search efforts, or its continued difficulties locating these documents, until almost a year later, in July 2013, when it produced the 1986 Plan documents in response to Mrs. Hartman's discovery requests and indicated that this was the oldest plan document it could locate. As such, Dana failed to keep Mrs. Hartman informed about its continued difficulties locating the 1979 Plan documents for almost an entire year after her written request, further suggesting that the imposition of a statutory penalty is appropriate. *Id.* Ultimately, Dana found a copy of the 1979 SPD in its own

file room, and thus the SPD apparently was in Dana's possession this entire time.  For all of

these reasons, an award of a statutory penalty against Dana is merited.

Having determined that a statutory penalty is indeed warranted, it remains to determine

the size of that penalty.  As stated earlier, the Court is entitled to award up to $110 per day. 29

C.F.R. § 2575.502c-1.  In cases the Court has reviewed, generally district courts have assessed

penalties ranging from less than $10 a day, where no bad faith or prejudice was shown, up to

$100 a day, where the administrator acted in bad faith, with aggregate penalties up to $35,000.

*Pierce v. Visteon Corp.*, No. 1:05-cv-1325, 2013 WL 3225832, at *21-22 (S.D. Ind. June 25,

2013) (collecting cases); *Killian v. Concert Health Plan*, No. 07 C 4755, 2010 WL 5316041, at

*3 (N.D. Ill. Dec. 17, 2010) (collecting cases); *Pisek v. Kindred Healthcare, Inc., Disability Ins.

Plan*, 633 F. Supp. 2d 659, 668 (S.D. Ind. 2007); *Reddy*, 2006 WL 642647, at *4; *Lowe*, 2003

WL 1565841, at *3; *Blazejewski v. William E. Gibson Money Purchase Pension Plan & Trust*,

No. 97 C 5466, 1999 WL 1044892, at *4 (N.D. Ill. Nov. 10, 1999); *Jackson*, 937 F. Supp. at 742

(collecting cases); *Kascewicz*, 837 F. Supp. at 1323-24 (collecting cases).

Here, although Mrs. Hartman encountered numerous delays and poor communication

from Dana, there is no evidence suggesting that Dana acted in bad faith.  It provided Mr.

Hartman's election form within three weeks of Mrs. Hartman's first written request, and kept

searching, at least to some extent, for the other Plan documents, as demonstrated through its

belated location of the 1979 SPD.  And other than having to file this action, there is no indication

that Mrs. Hartman was actually harmed by Dana's failure to timely produce the Plan documents.

Accordingly, on this record, the Court concludes that a modest statutory penalty of $10 per day

is appropriate.  *See Killian*, 2010 WL 5316041, at *3 (awarding $10 per day after articulating

that under the facts and circumstances of the case the penalty should be "modest"); *Reddy*, 2006 WL 642647, at *4 (awarding a "modest" penalty of $20 per day where plaintiff was "put to the trouble and frustration of making repeated requests for the [p]lan"); *Blazejewski*, 1999 WL 1044892, at *4 (awarding $10 per day where outside of filing a lawsuit, the plaintiff was not injured).

As to the duration of the per diem penalty, a statutory penalty typically runs from thirty days after the request was made until the beneficiary receives the requested information. *See Hess v. Hartford Life & Accident Ins. Co.*, 91 F. Supp. 2d 1215, 1225 (C.D. Ill. 2000). But if the 1979 Plan document is in fact lost, Dana will *never* be able to produce it. Allowing the statutory penalty to run indefinitely would not serve the purpose of the statute—to induce plan administrators to respond in a timely manner to an appropriate request for information. *Hite*, 38 F. Supp. 2d at 735. Accordingly, in cases where the requested documents were never produced, courts have chosen other ending dates, such as the entry of the order imposing the statutory penalty, *see Jackson*, 937 F. Supp. at 742; *Scarso v. Briks*, 909 F. Supp. 211, 215 (S.D.N.Y. 1996), the defendant's filing of its answer, *see Kascewicz v. Citibank*, 837 F. Supp. 1312, 1324 (S.D.N.Y. 1993), or the death of the administrator, *see Colarusso v. Transcapital Fiscal Sys. Inc.*, 227 F. Supp. 2d 243, 262-63 (D. N.J. 2002).

Here, Dana did, ultimately, produce the 1979 SPD, which ostensibly is dispositive as to whether the 1979 Plan required spousal consent. That is, Mrs. Hartman does not dispute Mr. Holmes's representation that the SPD would have contained a provision requiring spousal consent if the 1979 Plan document actually contained such a provision. Thus, the reason that Mrs. Hartman initially sought the 1979 Plan documents has now been put to rest—the 1979 Plan

apparently did not require the spouse of a participant to consent to a participant's decision to receive his or her pension benefits on a life only basis. For that reason, September 6, 2013—the date Dana produced the 1979 SPD—will be the ending date for the $10 per diem statutory penalty.

In sum, a statutory penalty will be imposed from June 16, 2012 (thirty days after Dana received Mrs. Hartman's initial written request), to September 6, 2013 (the date Dana produced the 1979 SPD), at a per diem amount of $10, equating to an aggregate amount of $4,470. Therefore, Mrs. Hartman's motion for summary judgment as to her statutory penalty claim will be GRANTED, and Defendants' motion for summary judgment on this claim will therefore be DENIED.

### C. The Plan-wide Injunctive Relief Mrs. Hartman Seeks Is Excessive

Besides her statutory penalty claim, Mrs. Hartman also advances a claim under § 1132(a)(2), arguing that Dana breached its fiduciary duty to her by failing to provide her accurate and complete information or to establish and maintain a reasonable claims procedure. (*See* Pl.'s Mem. in Supp. 14-24.) Section 1132(a)(2) authorizes plan participants or beneficiaries (among others) to bring civil actions against fiduciaries for appropriate relief under 29 U.S.C. § 1109. *Chesemore v. Alliance Holdings, Inc.*, __ F. Supp. 2d __, 2013 WL 2445036, at *6 (W.D. Wis. June 4, 2013) (citing 29 U.S.C. § 1132(a)(2)). In turn, § 1109(a) provides that a fiduciary who breaches any of its duties shall be, among other penalties, "subject to other equitable or remedial relief as the court may deem appropriate . . . ." 29 U.S.C. § 1109(a). The Seventh Circuit has explained that this "other equitable or remedial relief" language "grants courts the power to shape an award so as to make the injured plan whole while at the same time

apportioning the damages equitably between the wrongdoers." *Chesemore*, 2013 WL 2445036, at *6 (quoting *Free v. Briody*, 732 F.2d 1331, 1337 (7th Cir. 1984)).  As such, under § 1132(a)(2), a plan participant or beneficiary may commence a civil action for appropriate relief under § 1109(a) only in a representative capacity on behalf of the plan, not in her own behalf. *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 481-82 (7th Cir. 2010).

Here, Mrs. Hartman properly seeks plan-wide relief under § 1109, asking the Court to impose "a mandatory injunction requiring Dana to compile all plan documents and summary plan descriptions related to the pension benefits of all of its current participants, beneficiaries, and retirees, place them in a central location that will enable Dana to respond timely to future request[s] for documents . . . and report to the Court within a reasonable time after the date of its Order that Dana has complied with it or explain why Dana is not able to do so."  (Pl.'s Mem. in Supp. 24-25.)  This injunctive relief, however, far outweighs the harm that Mrs. Hartman, or the Plan, suffered, which is problematic because any award the Court gives must make the injured plan whole while simultaneously apportioning the damages equitably between the wrongdoers. *Chesemore*, 2013 WL 2445036, at *6 (quoting *Free*, 732 F.2d at 1337).

Not all of Dana's plan participants—by Dana's calculations, over 40,000—and their beneficiaries were injured by Dana's purported failure to retain the 1979 Plan documents or by the run around that Mrs. Hartman received from the Dana Pension Service Center.  Rather, only a very small subset of individuals were injured by these actions—Mrs. Hartman and other spouses whose rights are dependent upon the provisions of the 1979 Plan.  As such, ordering Dana to compile all of its plan documents and SPDs and place them in a central location, and then report to the Court that it has done so, far exceeds what is necessary to make Mrs. Hartman,

and other spouses like her, whole.  Furthermore, ordering such extensive injunctive relief would not apportion the damages equitably between the wrongdoers in this case.  *See id.*

Therefore, even if Dana breached its fiduciary duties to Mrs. Hartman by failing to provide her complete and accurate information or to maintain a reasonable claims procedure, the relief she seeks is disproportionate to the harm she, and the Plan as a whole, suffered.  As such, Mrs. Hartman's motion for summary judgment will be DENIED as to her breach of fiduciary duty claims, while Defendants' motion for summary judgment will be GRANTED as to these claims.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Docket # 22) is GRANTED as to her statutory penalty claim, but DENIED as to her breach of fiduciary duty claims.  The Clerk is DIRECTED to enter a judgment for the statutory penalty in the amount of $4,470 in favor of Plaintiff and against Defendants.  Defendants' Motion for Summary Judgment (Docket # 24) is GRANTED as to the breach of fiduciary duty claims, but DENIED as to the statutory penalty claim.

To the extent Mrs. Hartman is seeking attorney fees, she is to file a motion in accordance with Federal Rule of Civil Procedure 54(d)(2), and it will brief out in accordance with Local Rule 7-1(d)(2).

SO ORDERED.

Enter for the 21st day of October, 2013.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge