UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ELAINE HARTMAN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CAUSE NO. 1:12-CV-445** |
| | ) | |
| DANA HOLDING CORPORATION and | ) | |
| WEATHERHEAD-UAW COMBINED | ) | |
| HOURLY EMPLOYEE PENSION PLAN, | ) | |
| *and its successors*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

### I.  INTRODUCTION

On October 21, 2013, the Court granted in part and denied in part each of the parties'

cross-motions for summary judgment in this dispute governed by the Employee Retirement

Income Security Act ("ERISA") stemming from Plaintiff Elaine Hartman's inquiry about a

purported survivor's annuity of approximately $48.07 per month under her husband's pension

plan from Weatherhead Company, Dana Holding Corporation's ("Dana") predecessor. (Docket #

35.)  Hartman filed this suit not to recover the actual survivor's benefit, but rather, to seek a

statutory penalty for Dana's mismanagement of her inquiry and injunctive relief for Dana's

purported breach of its fiduciary duty to her.  Ultimately, the Court awarded Hartman a statutory

penalty in the amount of $4,470, but denied her breach of fiduciary claim.

Now before the Court is Hartman's Motion for Attorney's Fees, seeking $65,755.50 in

attorney fees. (Docket # 37, 38.)  Dana does not particularly dispute that Hartman should be

awarded fees, but contends that the amount of Hartman's fee request is unreasonable, noting that

it is *three times* the amount of its own legal fees. (Docket # 41.)  For the following reasons, the

Court will GRANT Hartman's motion for attorney fees, but will reduce the amount to $31,986.85.

## II.  FACTUAL BACKGROUND[1]

Mr. Hartman worked for Weatherhead for over twenty-four years.  In 1979,[2] after taking early retirement, Mr. Hartman signed an election letter opting to take his pension on a "life only basis," which provided him $10 more per month than if he had chosen a survivor's annuity.  The election letter further stated: "I understand that upon my death no further payments will be made."  Mr. Hartman, however, consistently told Mrs. Hartman that she would be entitled to a survivor's annuity under his pension plan.

In April 2011, Mr. Hartman passed away,[3] and Mrs. Hartman contacted Dana to inquire about her survivor's annuity.  More than three months later, Mrs. Hartman received a letter from Dana, informing her that her husband had been receiving a single life annuity pension with no further benefits payable after death.  Since this information was inconsistent with what her husband had always told her, Mrs. Hartman and her attorney, Douglas Powers, called Dana on multiple occasions in early 2012 and requested a copy of her husband's election form, a spousal waiver form, the plan document, and the summary plan description ("SPD") in effect when Mr. Hartman made his election in 1979.

When their phone requests proved unsuccessful, Powers sent a written appeal to Dana on

---

[1] This factual background is a summary of those facts set forth in the Court's Opinion and Order dated October 21, 2013 (the "Order") (Docket # 35).

[2] Dana purchased Weatherhead in 1979.

[3] Mr. Hartman received payments under his pension plan for 31 years and 10 months.

May 15, 2012, asserting that Dana's failure to provide the 1979 plan-related documents exposed Dana to a per diem statutory penalty under ERISA.  On June 5, 2012, Powers received a call from Sylvester Holmes, Dana's in-house counsel, informing that he would email Mr. Hartman's signed election form, and that Dana could not locate the 1979 plan documents but would keep looking for them.  The next day, Powers received Mr. Hartman's election form from Holmes.

Mr. Hartman's signed election form, however, did not end the matter for Mrs. Hartman. She speculated that the 1979 plan could have required a spousal waiver, and if so, that Mr. Hartman's election was invalid without her signature.  Therefore, her attorney continued to call Dana's processing center and when that was not fruitful, he phoned and wrote Holmes, identifying the shortcomings in Dana's handling of Mrs. Hartman's inquiry.  Holmes responded that he considered Mr. Hartman's election form to have resolved Mrs. Hartman's claim.

Ultimately, in December 2012, Mrs. Hartman filed this suit against Dana and the plan. (Docket # 1.)  In discovery, Dana produced the 1986 Plan, stating that it was the oldest copy of the pension plan that it could locate.  But on September 6, 2013, after both parties had filed and responded to motions for summary judgment, Holmes revealed that Dana had located the 1979 SPD just two days earlier in an unmarked box in its file room, and the SPD confirmed that the 1979 plan did not require spousal consent to waive a survivor's annuity.

### III.  ATTORNEY FEES UNDER ERISA

A court may award reasonable attorney fees to either party in the court's discretion in ERISA actions by a beneficiary to recover benefits or enforce or clarify rights under the plan. 29 U.S.C. § 1132(g)(1).  A request for attorney fees under § 1132(g)(1) is assessed under a "three-step framework." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 249 (2010).

3

At step one of the framework, the court must determine whether a party "is eligible for attorney fees." *Kough v. Teamsters' Local 301 Pension Plan*, 437 F. App'x 483, 490 (7th Cir. 2011) (unpublished).  To do so, the court asks whether the fee claimant had "some degree of success on the merits." *Huss v. IBM Med. & Dental Plan*, 418 F. App'x 498 (7th Cir. 2011) (unpublished) (citing *Hardt*, 560 U.S. at 255).  "A claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y],' but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Hardt*, 560 U.S. at 255 (alterations in original and citation omitted).

At the second step of the framework, the court must "determine whether fees should be awarded." *Kough*, 437 F. App'x at 490; *see Hardt*, 560 U.S. at 249.  The Seventh Circuit Court of Appeals "has recognized two tests to guide the court in making this decision." *Kough*, 437 F. App'x at 490 (citing *Herman v. Cent. States Se. & Sw. Areas Pension Fund*, 423 F.3d 684, 696 (7th Cir. 2005)).  These are the "substantial justification test" and the so-called "five factor test." *Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076, 1089 (7th Cir. 2012).  The "substantial justification test" is to consider whether the defendant's "litigation position was substantially justified." *Kough*, 437 F. App'x at 490.  The Court may use five factors (the "five factor test") in making this determination: "(1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan

4

as a whole; and (5) the relative merits of the parties' position." *Id*. (quoting *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 494 n.2 (7th Cir. 2011)).

Finally, if the Court determines that fees should be awarded, at step three it "must review the attorneys' fees and costs requested and limit them to a reasonable amount." *Hardt*, 560 U.S. at 249 (citation omitted); *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Although there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar–the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009) (citing *Hensley*, 461 U.S. at 433); *see Holmstrom v. Metro. Life Ins. Co.*, No. 07-cv-6044, 2011 WL 2149353, at *4 (N.D. Ill. May 31, 2011)*; Schnuckel v. Prudential Ins. Co. of Am.*, No. 02 C 5965, 2003 WL 21877632, at *1 (N.D. Ill. Aug. 7, 2003). "The district court may then adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher*, 574 F.3d at 856; *accord Holmstrom*, 2011 WL 2149353, at *4.

## IV.  DISCUSSION

The Court will now apply the three-step framework to Mrs. Hartman's attorney fee request.

### A.  Mrs. Hartman Is Eligible for an Award of Attorney Fees

At step one, Dana concedes that since the Court awarded Mrs. Hartman a statutory penalty of $4,470, she achieved "some degree of success on her merits" as set forth in *Hardt*, 560 U.S. at 255, making her eligible for a fee award. (Defs.' Resp. 2.)  Indeed, Mrs. Hartman's award of a statutory penalty concerned the "central issue" in the case and was more than a

"trivial success on the merits" or "purely procedural victory." *Hardt*, 560 U.S. at 255.
Accordingly, Mrs. Hartman successfully satisfies step one and is eligible for an award of
attorney fees.

### B.  Mrs. Hartman Should Be Awarded Attorney Fees

Proceeding to step two, the Court must determine whether attorney fees should be
awarded to Mrs. Hartman.  As with step one, Dana seemingly concedes that Mrs. Hartman
should be awarded *some* fees, centering its objections on the amount that she requests. (Defs.'
Resp. 2-8.)  For completeness, the Court will examine the five factors discussed earlier to
confirm that Dana's litigation position was not "substantially justified." *Kough*, 437 F. App'x at
490.  That is, whether a "genuine dispute" exists that is "justified to a degree that could satisfy a
reasonable person." *Little v. Cox's Supermarkets*, 71 F.3d 637, 644 (7th Cir. 1995); *see also
Lowe v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 339 (7th Cir. 2004).

As to the first factor–the degree of Dana's culpability or bad faith–the Court observed in
the Order that "although Mrs. Hartman encountered numerous delays and poor communication
from Dana, there is no evidence suggesting that Dana acted in bad faith." (Order 20.)
Nevertheless, the record suggests at least some negligence on Dana's part, as its processing
center gave Mrs. Hartman the run-around for months.  And after inferring that it perhaps never
received the 1979 plan documents from Weatherhead, Dana belatedly located the 1979 SPD *in
its own file room* after motions for summary judgment were filed and responded to in this matter.
Therefore, Dana is not without some culpability with respect to the events Mrs. Hartman
complained of in this lawsuit. *See, e.g.*, *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 748
F. Supp. 2d 903, 913 (N.D. Ill. 2010) (finding the plan culpable based on a drafting mistake

caused by its negligence and its attempt to ignore the plain language of the plan); *Egert v. Conn. Gen. Life Ins. Co.*, 768 F. Supp. 216, 218 (N.D. Ill. 1991) (concluding that the plan had culpability with respect to its denial of coverage, "even though its culpability may not rise to a legal standard of bad faith").  Consequently, the first factor weighs just slightly in favor of Mrs. Hartman.  And Dana admits that it has the financial ability to satisfy an award of attorney fees, and thus, the second factor favors Mrs. Hartman.

Likewise, the third factor weighs in favor of Mrs. Hartman, as an award of attorney fees would likely deter other persons from acting in such a manner under similar circumstances. Dana adamantly disagrees, arguing it "showed that the documents at issue in this case were lost despite good faith efforts to retain them" and that an award of attorney fees would not prevent other persons from "accidentally misfiling pension plan documents that are more than thirty years old." (Defs.' Resp. 3.)  It further attempts to paint itself in a positive light by emphasizing that despite financial difficulties, bankruptcy, changing of benefits administrators, layoffs of benefits personnel, and administrative restructuring, "it persevered and kept its pension administration system intact." (Defs.' Resp. 3.)

Contrary to its assertion, however, there is no evidence that Dana exerted "good faith efforts to retain [the 1979 plan documents]"; rather, the Court merely observed that there was no evidence of *bad* faith on Dana's part. *See Egert*, 768 F. Supp. at 218.  As long as a plan's beneficiaries or participants are still living, the terms of that plan remain critical (*see* Order 12-15), and an award here could deter other employers from taking a rather cavalier attitude, as did Dana, in response to requests for plan documents that "are more than thirty years old." (Defs.' Resp. 3). *See Winkelspecht v. Gustave A. Larson Co.*, No. 10-C-1072, 2012 WL 2675224, at *4

(E.D. Wis. July 4, 2012) (concluding that a fee award would deter others from similar conduct, emphasizing that "a Plan fiduciary must use reasonable caution in hiring and training employees who will answer benefit questions posed by participants or beneficiaries"). An award of fees could also cause employers to keep better track of plan documents when changing benefits administrators; laying off benefits personnel; and undergoing bankruptcies, restructuring, or mergers and acquisitions.

The fourth factor, the amount of benefit conferred on members of the pension plan, has little bearing on the issue. *See, e.g.*, *Raybourne*, 700 F.3d at 1089 (finding the fourth factor was "largely irrelevant in an individual dispute"). As the Court observed in the Order, there was "only a very small subset of individuals who were injured by [the loss of the documents]–Mrs. Hartman and other spouses whose rights are dependent upon the provisions of the 1979 Plan." (Order 23.)

As to the fifth factor, the relative merits of the parties' positions, Dana's litigation position was that Mrs. Hartman did not have standing; it did not have to produce the plan documents because they were "historical"; and it timely produced Mr. Hartman's election, but could not locate the other plan documents. (Docket # 27.) Of course, Dana's standing and historical documents arguments lacked merit. And with respect to the missing plan documents, the Seventh Circuit has considered in at least one instance that the "the dog ate my homework" defense was really "no defense at all." *Lowe*, 361 F.3d at 339 (concluding that the plan's position was not substantially justified where the relevant plan document had "vanished"). Moreover, the Court ruled against Mrs. Hartman on her breach of fiduciary duty claim because the plan-wide injunctive relief she requested was disproportionate to the harm that she and the plan suffered,

8

*not* because she failed to show that Dana breached its fiduciary duties to her. (Order 23-24.)

Considering the foregoing, the Court concludes that Dana's litigation position was not substantially justified and that attorney fees should be awarded to Mrs. Hartman.

### C.  Mrs. Hartman's Fee Award Will Be Reduced to $31,986.85

At the third step, the Court "must review the attorneys' fees and costs requested and limit them to a reasonable amount." *Hardt*, 560 U.S. at 249 (citation omitted); *see Hensley*, 461 U.S. at 433.  Attorney Powers seeks to be compensated at an hourly rate of $295 for 222.90 hours, amounting to a total fee award of $65,755.50.

Beginning with the hourly rate, "[a] reasonable hourly rate is to be determined by the 'market rate' for the services rendered." *Schnuckel*, 2003 WL 21877632, at *1 (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999)).  "Normally, an attorney's actual billing rate is presumptively appropriate to use as the market rate." *Id*. (citing *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996)).  Powers represents that $295 is his standard rate for matters involving employee benefits and ERISA. (Powers Aff. ¶ 5, Nov. 4, 2013.)  He also produces an affidavit from another local attorney who attests that an hourly rate of $295 "is well within the reasonable and customary rate in light of what other firms in Fort Wayne would charge for similar services." (VerPlanck Aff. ¶ 6.)  Dana apparently agrees, as it does not challenge Powers's hourly rate, and therefore, Mrs. Hartman's fee award will be calculated at the requested hourly rate of $295.

Turning to the number of billed hours, "[a] party requesting fees is required to exercise 'billing judgment' in making a claim that the number of hours submitted in a fee request is reasonable." *Schnuckel*, 2003 WL 21877632, at *2 (quoting *Spegon*, 175 F.3d at 552).  "Billing

judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.* (quoting *Spegon*, 175 F.3d at 552).  From the Court's review of the fee entries, it appears that Powers spent approximately 27.2 hours researching, drafting, and serving the complaint that advanced two claims; 9.4 hours with the report of parties' planning meeting; 14.9 hours in discovery; 63.4 hours researching and drafting Mrs. Hartman's summary judgment motion and exhibits; 35.6 hours researching and drafting a response brief to Dana's motion for summary judgment; 14.5 hours preparing and filing a reply to Mrs. Hartman's summary judgment motion; 10.3 hours with correspondence and settlement negotiations (Powers Aff. Ex. 1, Nov. 4, 2013); 32.4 hours drafting his fee petition (Powers Aff. Ex. 2, Nov. 4, 2013); and 15.2 hours drafting a reply to his fee petition (Powers Aff. Ex. 1, Nov. 27, 2013).

The Court concludes that the hours billed by Powers in a number of categories–specifically, the complaint, report of parties' planning meeting, summary judgment motion, response to Dana's summary judgment motion, fee petition, and reply to the fee petition–are excessive. *See Corbell v. S. Ill. Healthcare Group Health Plan*, 695 F. Supp. 2d 835, 839 (S.D. Ill. 2010) ("Hours are not reasonably expended 'if they are excessive, redundant, or otherwise unnecessary.'" (quoting *Stark v. PPM Am., Inc*., 354 F.3d 666, 674 (7th Cir. 2004))).  The billing entries supporting the hours in these categories are rather vague and redundant, offering no insight into why so much time was expended in these areas.  For example, there are at least seven entries recording more than 18 hours to "conduct research and draft complaint"; five entries recording almost 20 hours to "conduct research" for the summary judgment motion; and five entries recording more than 17 hours to "draft brief" for the summary judgment motion. (Powers Aff. Ex. 1, Nov. 4, 2013); *see Sullivan v. Gill*, No. 97 C 0446, 2000

WL 263727, at *2 (N.D. Ill. Feb. 28, 2000) (reducing attorney fee award in ERISA case due to redundant and excessive billing entries).

As a result, the Court will exercise its discretion to reduce the hours billed in those categories as follows: the complaint, 16 hours; the report of parties' planning meeting, 4 hours; the motion for summary judgment, 32 hours; the response to Dana's motion for summary judgment, 24 hours; the fee petition, 16 hours; and the reply to the fee petition, 8 hours.  This reduces the total number of hours billed by Powers from 222.9 to 154.9.

The Court may further adjust a fee request based on additional factors, including the complexity of the case and the degree of success on the merits. *Hensley*, 461 U.S. at 433 ("The product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'"); *Schlacher*, 574 F.3d at 856.  This case was not particularly novel or complex for an ERISA case as it advanced two fairly straightforward claims. *See Corbell*, 695 F. Supp. 2d at 841-42 (considering the "relatively unremarkable legal complexity (for an ERISA case)" when limiting the amount of fees).

More significantly, Mrs. Hartman prevailed on just one of her two claims and was awarded a "modest statutory penalty of $10 per day," when she could have been awarded up to $110 per day. (Order 12, 20.)  Thus, Mrs. Hartman received a statutory penalty award of just $4,470, when she could have been awarded $49,170.  Consequently, her "degree of success" was quite limited and undercuts her high fee request. *Schlacher*, 574 F.3d at 856.  Moreover, the significant amount of legal resources expended in this action is notable considering Mrs.

11

Hartman's advanced age and the very small potential survivor's annuity underlying this dispute.[4] (*See* Order 4 n.5.)

Therefore, as a result of Mrs. Hartman's "limited success," the Court will further reduce the fee award by 30%. *See Spegon*, 175 F.3d at 557 (reducing a fee award by 50% due to the "limited success" of the plaintiff).  Accordingly, Mrs. Hartman's motion for attorney fees will be GRANTED, but reduced from $65,755.50 to $31,986.85. *See generally Huss v. IBM Med. & Dental Plan*, 418 F. App'x 498, 513 (7th Cir. 2011) (unpublished) (opining that plaintiff "achieved some success on the merits of her case" and "may therefore be entitled to some portion of her attorney's fee request").

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Attorney's Fees (Docket # 37) is GRANTED, except that the fee award is reduced to $31,986.85.  The Clerk is directed to enter a judgment accordingly.

SO ORDERED.

Enter for the 20th day of December, 2013.

S/Roger B. Cosbey_____
Roger B. Cosbey,
United States Magistrate Judge

---

[4] Mrs. Hartman cites a string of ERISA cases granting fee awards ranging from $60,000 to $109,000, and claims that the time spent by Powers in this case is "well within amounts awarded in similar cases."  But in most of those cases the plaintiff successfully sued to actually recover benefits under the plan, not just advance a claim for a statutory penalty or breach of fiduciary duty. *See Huss*, 418 F. App'x at 1; *Raybourne*, 576 F.3d at 1078; *Winkelspecht*, 2012 WL 2675224, at *1; *Holmstrom*, 2011 WL 2149353, at *1.